**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 16-3703
_____

UNITED STATES OF AMERICA

v.

JOSEPH TORRENCE,
a/k/a Joseph Terrence

Joseph Torrence,
            Appellant

_____

No. 17-2173
_____

UNITED STATES OF AMERICA

v.

STEVEN LOCKS, JR.,
            Appellant
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(No. 2-15-cr-00538-001 & 2-15-cr-00538-002)
District Judge:  Honorable Michael M. Baylson

Submitted:  February 5, 2018

Before:  CHAGARES, SCIRICA, and COWEN, Circuit Judges.

(Filed: March 2, 2018)

_____

OPINION[*]

_____

CHAGARES, Circuit Judge.

In this matter, we consider the appeals of Steven Locks, Jr. and Joseph Torrence,

co-defendants convicted of crimes involving the sexual exploitation of a three-year old

child. Following the co-defendants' guilty pleas, the United States District Court for the

Eastern District of Pennsylvania imposed upon Locks a sentence of 300 months of

imprisonment, a lifetime term of supervised release, a fine of $600, and a special

assessment of $600. Locks Appendix ("App.") 116–18. The District Court sentenced

Torrence to 324 months of imprisonment, a lifetime term of supervised release, and a

special assessment of $500. Torrence App. 50–52. Locks appeals the procedural

reasonableness of his sentence, and Torrence appeals both the procedural and substantive

reasonableness of his. Locks Brief ("Br.") 3; Torrence Br. 2. For the reasons that follow,

we will affirm the District Court's sentences.

I.

As this Opinion is non-precedential and we write only for the parties, our factual

recitation is abbreviated. In August 2015, Philadelphia police discovered sexually

explicit photographs of a three-year old girl on a mobile phone belonging to Locks. The

police also discovered text messages between Locks and Torrence, in which they

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

discussed taking sexually explicit photographs of the child. After further investigation, the police determined that the child was the niece of a woman in whose house Locks was living. Torrence had convinced the woman to allow Locks, who needed a place to live, to stay there and help care for that child and other children who were residing in the house. Soon after Locks began helping with childcare responsibilities, Torrence started asking him to take sexually explicit photographs of the child. In the course of an extremely graphic exchange between the two men, Torrence told Locks to sexually touch the child and photograph the act in question. We need not delve with great specificity into the appalling details of these communications. It suffices to note that (1) both men participated in graphic, sexual discussions regarding the child; (2) in response to Torrence's requests, Locks took photographs of the child's vagina, labia, and anus; and (3) at least one such photograph depicts Locks' hand spreading the child's legs open in order to take a focused image of that area of her body. Locks transmitted those images to Torrence, who acknowledged receipt via text message.

A grand jury returned an eleven-count indictment charging Locks and Torrence with various federal crimes pertaining to child sexual abuse and the production, transmission, and possession of child pornography. Locks App. 16–24. Both men pleaded guilty. For Locks, the mandatory minimum term of imprisonment was fifteen years, and, without factoring in statutory maximum sentences, the United States Sentencing Guidelines (the "Guidelines") range was life imprisonment. Locks Br. 10. Torrence's convictions subjected him to a Guidelines range of 324 to 405 months of incarceration, with a 180-month mandatory minimum term on three counts. As noted

3

previously, Locks ultimately received a sentence of 300 months of imprisonment, and Torrence received a sentence of 324 months of imprisonment. Torrence did not object at or after sentencing. Following sentencing, Locks and Torrence timely appealed.

## II.

The District Court had jurisdiction over this case pursuant to 18 U.S.C. § 3231. We exercise jurisdiction pursuant to 28 U.S.C. § 1291. Because neither party preserved the issues raised on appeal, our procedural reasonableness review of the District Court's sentencing is for plain error. See United States v. Flores-Mejia, 759 F.3d 253, 255 (3d Cir. 2014) (en banc).[1] We review the substantive reasonableness of the sentence for abuse of discretion. United States v. Tomko, 562 F.3d 558, 567 (3d Cir. 2009) (en banc).

## III.

With respect to procedural reasonableness, district courts at sentencing "must give 'meaningful consideration' to all of the statutory factors in 18 U.S.C. § 3553(a)."[2]

---

[1] To establish plain error, the movant:

> must show that (1) the District Court erred; (2) the error was clear or obvious, rather than subject to reasonable dispute; and (3) the error affected the appellant's substantial rights, which in the ordinary course means that there is a reasonable probability that the error affected the outcome of the proceedings. . . . If all three elements are established, then the Court may exercise its discretion to award relief. . . . That discretion should be exercised only in cases where the error "seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."

United States v. Calabretta, 831 F.3d 128, 132 (3d Cir. 2016) (quoting United States v. Stinson, 734 F.3d 180, 184 (3d Cir. 2013)), abrogated in part on other grounds by Beckles v. United States, 137 S. Ct. 886 (2017).

United States v. Olhovsky, 562 F.3d 530, 547 (3d Cir. 2009) (quoting United States v. Cooper, 437 F.3d 324, 329 (3d Cir. 2006)).  However, the court need not "discuss and make findings as to each of the § 3553(a) factors if the record makes clear the court took the factors into account in sentencing."  Cooper, 437 F.3d at 329.  District courts must also "acknowledge and respond to any properly presented sentencing argument which has colorable legal merit and a factual basis."  Flores-Mejia, 759 F.3d at 256 (quoting United States v. Begin, 696 F.3d 405, 411 (3d Cir. 2012)).  Failure to meaningfully consider the § 3553(a) factors or an appellant's colorable arguments is grounds for remand and resentencing; id., however, "[t]here are no magic words that a district judge must invoke when sentencing," Cooper, 437 F.3d at 332.  "The touchstone of 'reasonableness' is whether the record as a whole reflects rational and meaningful consideration of the factors enumerated in 18 U.S.C. § 3553(a)."  United States v. Grier, 475 F.3d 556, 571 (3d Cir. 2007).

A district court's sentence is substantively reasonable, "wherever it may lie within the permissible statutory range," if it "was premised upon appropriate and judicious consideration of the relevant factors."  United States v. Schweitzer, 454 F.3d 197, 204 (3d Cir. 2006).  We will not reverse a sentence on grounds of substantive unreasonableness "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided."  Tomko, 562 F.3d at 568.

5

## A.

We turn first to Locks, who is appealing only the procedural reasonableness of his sentence. Locks argues that the District Court committed procedural error by ignoring relevant sentencing factors. He notes the District Court's statement that sentencing factors besides deterrence "are irrelevant here." Locks Br. 11, 14–15; Locks App. 114–15. Locks also argues that the District Court failed to adequately consider his history and characteristics, particularly as evidenced by the report of forensic psychologist Dr. Singer. Locks Br. 15.

At sentencing, the District Court considered the sentencing guidelines and then stated:

> [T]he conduct of the defendant went above and beyond what you would call minimum conduct and [he] committed a number of different crimes, all of which are very serious in nature.
>
> So, the case requires substantial punishment. The defendant is of limited intelligence. He is competent, we had concerns about that. We have an examination. And a finding of competency . . . .
>
> So, the other sentencing factors are irrelevant here. This is a case in which deterrence is very important. Congress has made it clear that crimes against minors are to be dealt with very severely by judges in federal court.
>
> This is a very aberrant behavior. It's very criminal in its conduct, and there in my view is some likelihood of an individual who would do this might do it again. So, I think there is some dangerousness to the defendant having done these acts without any reason or any background. He was prodded by Mr. Torrence. I still believe that he is very culpable, but he is less culpable than Mr. Torrence, and for that reason I'm going to impose a sentence that is slightly lower than the one that Mr. Torrence.
>
> But another reason is that Mr. Locks is substantially younger. And I think for the safety of others, that he needs to be incarcerated for substantial period of time so that when he comes out he will be an elderly adult, a senior citizen so to speak that he will hopefully have had a lot of time to think about what he did was very wrong, and he'll be on very intensive supervisory release as well.

6

> So, those are some of the factors that I think are applicable here. And I think that if there is any aspect for rehabilitation, or for education for Mr. Locks it needs to take place in a custodial institution.

Locks App. 114–15. This statement makes clear that, despite the colloquial assertion that only one sentencing factor is relevant, the District Court fully considered all of the relevant factors. The District Court noted the nature of the offense, the intelligence and relative culpability of Locks, the "examination" of Locks' psychological status and re-offense risk, the need for the sentence to reflect the seriousness of the offense, the need to deter his conduct and protect the public, the need to provide him education, and the sentencing range for this type of offense. It then referred to "factors" in the plural as applicable to the case. Though the District Court's discussion of these factors is somewhat short, it sufficiently demonstrates meaningful consideration.

As for the Singer report, it concluded that Locks presented a low risk of reoffending. Locks Br. 9–10. Locks argues that this situation is akin to that in United States v. Olhovsky, 562 F.3d 530 (3d Cir. 2009). In that case, Olhovsky pleaded guilty to possession of child pornography and was sentenced to six years of imprisonment. Id. at 532. At sentencing, the district court received a psychological evaluation, which concluded that Olhovsky had "made substantial progress in treatment," is in a "low risk range" for reoffending, and "presents within the limits of risk appropriate for outpatient management." Id. at 540. Nevertheless, the Olhovsky district court characterized him in the following manner:

> He's young and as the psychologists have admitted, they don't know what he's going to do. He certainly has indicated pedophile proclivities in the past and they can't tell me whether or not he will be a pedophile in the future.

7

. . .

　　There is only, as far as I'm concerned, one significant mitigating factor in Mr. Olhovsky's favor, his youth. He might stand some chance but, you know something, he also could turn around and again become a predator — a pedophile monster, and this Court is not prepared to impose any sentence which, one, denigrates the significance of the conduct which Mr. Olhovsky has done, suggest that this does not warrant substantial, indeed, potentially draconian punishment . . . .

　　As far as the Court is concerned, it is the best hope that this society has for Mr. Olhovsky given how it <u>appears that prior effects have largely failed</u>. I understand [the defense is] presenting arguments that the past few years have been successful in some manner or other but, quite frankly, the Court is unpersuaded that that is an overwhelming predictor of success.

Id. at 542 (emphasis and alterations in original). On appeal, we remanded for resentencing, concluding in relevant part that the district court's sentence was not procedurally reasonable. Id. at 553. We noted that "[t]he court's suggestion that Olhovsky 'could turn around and become again a predator — a pedophile monster,' and its statement that a sentence must not 'denigrate, the significance of the conduct,'" demonstrate a focus "on incapacitation, deterrence and punishment to the exclusion of other sentencing factors." Id. at 543–45. We also described how a fair comparison between the examining physician's report and the Olhovsky district court's characterization of the situation shows that that characterization is unreasonable. See id. at 550 (noting that the report clearly established that treatment had been successful, in direct contrast to the district court's assertion that it had largely failed). Finally, we observed that psychologists necessarily deal in probabilities of future behavior rather than certainties, discrediting the district court's rationale that its sentence is supported because psychologists cannot conclude with certainty that an offender will not be a pedophile in the future. Id.

8

The situation here is quite unlike that in Olhovsky. The Olhovsky district court's misapprehension of the psychological report indicates that it did not meaningfully consider that document and the relevant factors therein. In contrast here, although the District Court made rather short shrift of its reasoning that Locks still presents a danger to the public, it did not demonstrate a misunderstanding of the psychological report or an improper focus solely on punishment, incapacitation, and deterrence. It is also notable that our review of this case is for plain error, whereas in Olhovsky, our review fell under the general abuse of discretion standard.

Applying that plain error standard, we cannot conclude that the District Court erred. The court meaningfully considered the § 3553(a) factors and Locks' colorable arguments. Consequently, we will affirm the sentence that the District Court imposed upon Locks.

B.

We next consider Torrence's appeal of the procedural and substantive reasonableness of his sentence. As a preliminary matter, we must determine whether Torrence preserved his procedural issue for appeal. At sentencing, Torrence did not object to the procedural reasonableness of the District Court's sentence. He now urges us to conclude that he preserved that issue for appeal by "present[ing] his arguments fully in a Presentence memorandum . . . [and before the District Court] at the sentencing hearing. Torrence Reply Br. 3. He argues that because the District Court did not inquire after sentencing whether there were objections to procedural matters, "counsel will be hard pressed to advance arguments to the sentencing court after the sentencing proceedings are

9

concluded and the sentence has been pronounced." Id. at 4. In defense of this position, he cites footnote 8 of our recent en banc Opinion in Flores-Mejia, in which we "encourage[d] district courts" to make such enquiries, but did not "make this a requirement that district judges must follow." Flores-Mejia, 759 F.3d at 258 n.8. The application of this footnote is clear, and we see no reason to upset the Flores-Mejia holding that "in a criminal prosecution, unless a relevant objection has been made earlier, a party must object to a procedural error after the sentence is pronounced in order to preserve the error and avoid plain error review." Id. at 258. Torrence failed to object and therefore failed to preserve the issue. As a result, we review the procedural reasonableness of his sentence for plain error.

Torrence argues that the District Court's sentencing was procedurally unreasonable because it "appeared to rely exclusively upon the seriousness of [Torrence's] conduct." Torrence Br. 11. In the next sentence of the brief, Torrence offers a seemingly contradictory assertion that "[a]ccording to the District Court, the Appellant had failed to exhibit remorse, constituted a danger and a public safety risk, was without possibility of rehabilitation and required specific deterrence." Id. This alone suggests that the District Court did not exclusively rely upon the seriousness of the offense. In fact, the District Court noted: (1) the seriousness of the offense; (2) the need for significant punishment; (3) Torrence's prior conviction for statutory rape; (4) Torrence's denial about his conduct but ability to recognize and comprehend other concepts; (5) the conclusion that having considered the psychiatric exam, Torrence is "obviously just in denial about the criminal conduct that led to his guilty plea;" (6) that

10

Torrence committed the relevant offense when he was almost 60 years old; (7) that Torrence constitutes a public safety risk; (8) the need for deterrence; and (9) that the Court does not "see any possibility of rehabilitation for [him] outside of a custodial institution." Torrence App. 49–50. Particularly in light of the fact that our review is for plain error, this discussion constitutes a meaningful consideration of all the § 3553(a) factors.

In addition, Torrence argues that the District Court did not consider mitigation evidence, specifically the report of psychologist Dr. Lorah, who concluded that Torrence's risk of future illegal sexual behavior is moderate, and character evidence provided by his family that his conduct was aberrational. Torrence Reply Br. 12, 15–16. He also applies these same arguments to his position that the District Court erred with respect to the substantive reasonableness of his sentence. Id. at 17. The District Court noted that in light of the psychological exam and Torrence's behavior in court, it found him to be "in denial about the criminal conduct" at issue. Torrence App. at 49. The District Court also expressly responded to the family witnesses point, stating that "perhaps Mr. Torrence wasn't committing these crimes when he was with their children with him, and just was doing this with someone he didn't think would be — would be reported, or he wouldn't be discovered." Torrence App. 49–50. For those reasons, Torrence's arguments that the District Court did not adequately address his arguments is unavailing.

Finally, Torrence argues in a footnote that the District Court erred by not addressing the pre-sentence report at the sentencing hearing and by failing to enunciate

11

the Guidelines range for the record. Although the sentencing rationale was not grounded in specific reference to the pre-sentence report, that is not a requirement for sentencing. Moreover, there is no disagreement that the Guidelines range was clear and understood by both parties. Thus, there is no procedural error.

As noted above, we will not reverse a sentence on grounds of substantive unreasonableness "unless no reasonable sentencing court would have imposed the same sentence on that particular defendant for the reasons the district court provided." Tomko, 562 F.3d at 568. The facts of this case do not meet that high burden. Torrence committed a particularly serious and harmful crime — inducing the sexual exploitation of a child — and was found to be at risk for reoffending and a danger to society. Notably, his sentence was at the bottom end of the Guidelines range. The District Court's reasoning and the facts of this case plainly support this sentence; therefore, his sentence was substantively reasonable, and the District Court did not err.

IV.

Finally, Locks and Torrence argue that the District Court improperly imposed the sentences as a result of its revulsion rather than an analysis of the relevant factors. See Locks Br. 17–19 n.8; Torrence Br. 7. Crimes involving the sexual exploitation of children, by their nature, may be considered particularly shocking. When tasked with sentencing the perpetrators of such crimes, the courts must act without passion or prejudice. We reassert that "revulsion over these crimes cannot blind us as jurists to the individual circumstances of the offenders who commit them." Olhovsky, 562 F.3d at 552. Nevertheless, a sentencing court's expression of revulsion does not necessarily

12

invalidate its reasonable sentencing.  In this matter, despite any implicit disgust one might discern from the District Court, we conclude that it acted with procedural and substantive reasonableness.

V.

For the reasons stated above, we will affirm the sentences imposed upon Locks and Torrence.